UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | CIVIL ACTION NO. 97-1387 |
| -vs- | JUDGE LITTLE |
| SUNBELT DEVELOPMENT CORPORATION, WENDELL ROGERS, DONALD HAMMOND and WILLIE DAVIS | |

## MEMORANDUM RULING AND ORDER

Before the court is a motion for summary judgment and to set disgorgement and prejudgment interest filed by the Securities and Exchange Commission ("Commission" or "SEC") against defendant Donald Hammond ("Hammond") [Doc. # 62]. Hammond opposed the motion on 7 October 2005 [#71]. For the following reasons, the plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

Hammond and co-defendants Sunbelt Development Corporation ("Sunbelt"), Wendell Rogers and Willie Davis undertook a scheme in which over $3.5 million in unregistered securities were fraudulently sold to over 200 investors in at least 16 states. When Hammond did not respond to the proceeding by the SEC for injunctive and other relief filed on 15 July 1997, this court entered a default judgment against him on 5 January 1998 [#23]. That judgment prohibited Hammond from further violations of federal securities laws and ordered disgorgement of $947,347, representing the gains that Hammond received from

the unlawful sale of the aforementioned securities, as well as prejudgment interest on those gains. On 2 September 1998, we subsequently ordered Hammond to pay a civil penalty of $100,000 [#32].

After conducting a hearing on the SEC's motion for civil contempt on 7 July 1999, at which Hammond appeared *pro se*, the magistrate recommended that Hammond be found in civil contempt [#43]. We adopted the magistrate's report and recommendation on 14 October 1999 [#56], but stayed the recommended imposition of a fine and/or imprisonment pending a ruling on Hammond's motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. That motion was denied on 16 November 1999 [#58] and Hammond timely appealed [#59].

On 22 May 2000 the Fifth Circuit granted the SEC's unopposed motion to remand the case to this court [#61] in order for the SEC to provide a more detailed basis for its disgorgement calculation, for Hammond to respond, for both parties to present evidence, and for this court to determine whether a hearing on the amount of disgorgement was necessary and to redetermine the amount of disgorgement. Pl.'s Mem. 4. Inexplicably, more than five years passed between the Fifth Circuit's judgment and the filing of the instant motion. The SEC offers no explanation whatsoever for this long delay, nor did Hammond seek to have the SEC's action dismissed for want of prosecution during this time.

## DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions

2

on file, together with the affidavits, if any" when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law." See Anderson, 477 U.S. at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See id.; Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. See Anderson, 477 U.S. at 255. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-moving party must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. See FED. R. CIV. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Such evidence should create more than a metaphysical doubt about the material facts or should be more than a theoretical possibility that the claim is good. See Matsushita, 475 U.S. at 586; Pennington v. Vistron Corp., 876 F.2d 414, 426 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1123 (5th Cir. 1988). The moving party need only point out the absence of evidence supporting the non-moving party's case, and it "need not negate the elements of the nonmovant's case." See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. See Fontenot v.

Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1996).

While the party opposing the motion may use proof filed by the movant to satisfy his burden, "only evidence – not argument, not facts in the complaint – will satisfy" the burden. See Solo Serve Corp. v. Westowne Assocs., 929 F.2d 160, 164 (5th Cir. 1991). "Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." See Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations omitted).

**B.    Disgorgement and Prejudgment Interest**

The issue of disgorgement is within the jurisdiction of this court. "Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy." SEC v. Manor Nursing Ctrs. Inc., 458 F. 2d 1082, 1103 (2d Cir. 1972). Furthermore, federal courts, including the Fifth Circuit, have recognized that disgorgement is a possible ancillary remedy in SEC civil enforcement suits. See SEC v. Texas Gulf Sulfur Co., 446 F.2d 1301, 1307-08 (2d Cir.), cert. denied, 404 U. S. 1005 (1971), reh'g denied, 404 U. S. 1064 (1972) (upholding court's general equity powers to afford "complete relief" and "appropriate remedies"); SEC v. Blatt, 583 F. 2d 1325, 1335 (5th Cir. 1978).

Disgorgement deprives wrongdoers of ill-gotten gains. E.g., SEC v. United Energy Partners, Inc., 88 F. App'x 744, 746 (5th Cir. 2004) (finding no abuse of discretion in district court's equitable decision to order disgorgement); SEC v. Huffman, 996 F.2d 800, 802 (5th

Cir. 1993) (distinguishing disgorgement from restitution). It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement, unlike restitution, does not aim to compensate the victims of the wrongful acts. See SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 102 (2d Cir. 1978). Thus, a disgorgement order might be for an amount more or less than that required to make the victims whole. Rather than "a mere money judgment or debt," disgorgement is more akin to "an injunction in the public interest." See Pierce v. Vision Investments Inc., 779 F.2d 302, 307 (5th Cir. 1986). "The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." Manor Nursing, 458 F. 2d at 1104.

In addition to its broad discretion in determining whether or not disgorgement is applicable, the district court also has discretion in calculating the disgorgement amount itself. SEC v. Lorin, 76 F.3d 458, 462 (2d Cir. 1996). The disgorged amount must be "causally connected to the violation," but it need not be figured with exactitude. SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995) (internal citation and quotation marks omitted). Accordingly, the only requirement is that the disgorgement sought be a reasonable approximation of the profits causally related to the wrongdoing. Id. Once the Commission shows the existence of a fraudulent scheme in violation of federal securities laws, the burden shifts to the defendant to "demonstrat[e] that he received less than the full amount allegedly misappropriated and sought to be disgorged." SEC v. Benson, 657 F. Supp. 1122, 1133 (S.D.N.Y. 1987).

5

A party must prove an inability to pay a disgorgement order by a preponderance of the evidence. Huffman, 996 F.2d at 803 (observing district court was not bound to accept unsubstantiated, self-serving testimony as true); SEC v. AMX, Int'l, Inc., 7 F.3d 71, 73 (5th Cir. 1993) ("[F]inancial inability is a defense for failure to comply with a court-ordered disgorgement."). Hammond has presented no such evidence.

Hammond asserts that summary judgment is improper here because there are genuine issues for trial. Rather than present any evidence to the court to contradict the documents submitted by the SEC in support of its motion, Hammond instead argues that he did not profit from his activities, that he is unable to pay the judgment, and that the SEC's delay entitles him to a dismissal. Concomitantly, he ignores the significant procedural history of this case, including a finding by the magistrate that Hammond had engaged in a "simplistic and transparent scheme to hide assets and to attempt to avoid this court's lawful orders." Mag.'s Report and Recom. 10. Hammond's arguments do not undermine the evidence that he participated in a scheme to sell unregistered securities. As previously stated, Hammond has not produced any evidence to establish an issue of material fact for trial. FED. R. CIV. P. 56; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); SEC v. Wagman, 253 F.3d 701 (5th Cir. 2001) (affirming summary judgment decision permanently enjoining defendant from violating federal securities laws and ordering him to pay disgorgement and civil penalty).

The SEC asks that the court order Hammond to disgorge a total of $577,520 in investor funds that he received. Pl.'s Mem. 9. In the case of the fraudulent sale of securities, it is appropriate to order disgorgement of proceeds received in connection with the offering.

See Manor Nursing, 458 F.2d at 1104 ("We hold that it was appropriate for the district court to order [defendants] to disgorge the proceeds received in connection with the [securities] offering."). Hammond has not met his burden of demonstrating an inability to pay. Further, we conclude that the SEC has met its burden of persuasion that its proposed disgorgement figure reasonably approximates the amount of unjust enrichment.

The SEC has also requested an award of prejudgment interest totaling $213,730.87 based on the amount disgorged. Pl.'s Mem. 10. The decision of whether to order prejudgment interest, like the decisions to grant disgorgement and in what amount, is left to the district court's "broad discretion." SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996); see also Krim v. PCOrder.com, Inc., 402 F.3d 489, 502-03 (5th Cir. 2005). Considering the instant circumstances, an award of interest is appropriate in the amount calculated by the SEC based on the rate used by the Internal Revenue Service for unpaid balances. See First Jersey Secs., 101 F.3d at 1476.

**C.** **Dismissal and Laches**

Hammond contends that Rule 41(b) of the Federal Rules of Civil Procedure entitles him to a dismissal given the SEC's failure to prosecute the case. The SEC's response is that laches is not appropriate here, and even if appropriate, is unavailable to defendants in SEC enforcement actions. It is well established that a district court has the power to dismiss an action for failure to prosecute upon a defendant's motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. See FED. R. CIV. P. 41(b). The district court "also has the inherent authority to dismiss an action *sua sponte*, without motion by a defendant." Martinez v. Johnson, 104 F.3d 769, 772 (5th Cir. 1997).

As the Fifth Circuit has cautioned, however, "the sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a careful exercise of judicial discretion." Durham v. Florida East Coast Ry. Co., 385 F.2d 366, 368 (5th Cir. 1967) (internal quotation omitted). Accordingly, the Fifth Circuit has held "that Rule 41(b) dismissals with prejudice will be affirmed only upon a showing of a clear record of delay or contumacious conduct by the plaintiff . . . and where lesser sanctions would not serve the best interests of justice." Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir. 1982) (internal citation and quotations omitted). It is essential that we expressly consider lesser sanctions. Boudwin v. Graystone Ins. Co., Ltd., 756 F.2d 399, 401 (5th Cir. 1985). Here, despite the government's unexplained delay, a dismissal would not serve the best interests of justice.

As a general rule, the doctrine of laches is inapplicable to governmental agencies seeking to vindicate public rights or interests. See United States v. Summerlin, 310 U.S. 414, 416 (1940); Fein v. United States, 22 F.3d 631, 634 (5th Cir. 1994); United States v. Fernon, 640 F.2d 609, 612 (5th Cir. 1981). SEC civil enforcement actions "serve the public interest in accomplishing voluntary compliance with the securities laws." SEC v. Toomey, 866 F. Supp. 719, 724 (S.D.N.Y. 1992) (internal citation and quotation marks omitted); see also SEC v. Willis, 777 F. Supp. 1165, 1175 (S.D.N.Y. 1991) ("[T]he SEC [acts] in the public interest by attempting to enforce effectively the federal securities laws under its statutory mandate.") (internal citation and quotation marks omitted)). The defense of laches is thus inapplicable to SEC civil enforcement actions seeking to enjoin future violations of the securities laws. See, e.g., Toomey, 866 F. Supp. at 725 ("[T]he defense of laches must fail against the SEC."); Willis, 777 F. Supp. at 1174-75; SEC v. Continental Advisers, [1978

8

Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,489, 1978 WL 1098 (D.D.C. 1978) (striking laches defense).

In any event, in order to invoke the doctrine of laches, Hammond must show (1) an inexcusable delay by the SEC in asserting a right and (2) undue prejudice to him as a result of that delay. Rogers v. City of San Antonio, 392 F.3d 758, 773 (5th Cir. 2004). The existence of laches is a question to be decided by the court "after weighing the equities as they appear from the facts of each case." Esso Int'l., Inc. v. SS Captain John, 443 F.2d 1144, 1150 (5th Cir. 1971). Hammond argues that he would suffer prejudice as a result, as holding him accountable for this obligation after such a lengthy delay would be inequitable in light of changes in the Bankruptcy Code during the intervening period. Def.'s Opp. 6-7. He does not cite any case law in support of his argument. "A court may decline to address an argument that is not adequately briefed." In re HECI Exploration Co., 862 F.2d 513, 525 (5th Cir. 1988). Because the SEC is not subject to this defense, we decline to further address the issue of laches. Furthermore, even if the SEC was subject to the laches defense, we find that Hammond has not sufficiently demonstrated prejudice as a result of the delay.

**D.  Dischargeability of Debt**

The SEC has requested that we designate any disgorgement and prejudgment interest order against Hammond as a nondischargeable debt under 11 U.S.C. § 523(a)(19), an amendment to the Bankruptcy Code created by the Sarbanes-Oxley Act of 2002. Pub. L. 107-204, § 803(3) (2002); see generally In re Gibbons, 289 B.R. 588, 591-93 (Bankr. S.D.N.Y. 2003) (providing broad overview of legislative history of Sarbanes-Oxley in relation to § 523(a)(19)), aff'd, 311 B.R. 402 (S.D.N.Y. 2004), aff'd, 155 F. App'x 534 (2d

Cir. 2005). Section 523(a)(19) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to indicate that debts for violations of the federal securities laws are nondischargeable, irrespective of whether the federal judgment or order occurs "before, on or after the date on which the petition was filed." Pub. L. 109-8, § 1404 (2005). This amendment was effective beginning 30 July 2002, the date the Sarbanes-Oxley Act was enacted.

Hammond argues for a dismissal of this action in order to avoid paying any disgorgement or prejudgment interest. He seems to contend that if he is ordered to pay disgorgement and prejudgment interest, that these sums should not be excepted from a bankruptcy discharge. His logic is that because he could have obtained relief from such a judgment prior to the enactment of amendments to the Bankruptcy Code, to find against him now would be inequitable. Def.'s Opp. 7. He fails to support this specious argument with any reference to any supporting authority and does not offer any analysis based on applicable case law concerning the issue of prospective and retroactive statutes.

A bankruptcy discharge is a privilege, not a constitutional right. See United States v. Kras, 409 U.S. 434, 446-47 (1973); McLellan v. Mississippi Power & Light Co., 545 F.2d 919, 929 n.52 (5th Cir. 1977); United States v. Johnston, 267 B.R. 717, 722-23 (Bankr. N.D. Tex. 2001). A chapter 7 debtor has no statutory guarantee that any of his debts will be discharged. Compare 11 U.S.C. §§ 523, 727. "A discharge in bankruptcy is a legislatively created benefit; Congress may grant it on conditions, and could withhold it altogether if it chose." Hudson County Welfare Dept. v. Roedel, 34 B.R. 689, 694 (D.N.J. 1983) (citing Kras). A petition in bankruptcy is merely an application for discharge and does not create

an expectation or presumption that all or even that certain debts will be discharged. See Gibbons, 289 B.R. at 597. The possibility is always present that a chapter 7 debtor could walk out of the bankruptcy process still having to satisfy all of his pre-petition financial liabilities.

Moreover, § 523(a)(19) will not impose any new duties on Hammond with regard to conduct associated with transactions he has already completed. Section 523(a)(19) "does not make unlawful conduct that was lawful when it occurred." See Gibbons, 289 B.R. at 596. The conduct that violated the federal securities laws was already unlawful and subject to monetary liability when Hammond filed his bankruptcy petition. A debtor cannot hold a legitimate expectation that a discharge is forthcoming once the bankruptcy process is commenced. As previously stated, a debtor does not hold a property interest in receiving a discharge. See In re Lewandowski, 325 B.R. 700, 708 (Bankr. M.D. Pa. 2005). As the bankruptcy court has not yet ruled on the discharge of the debt here at issue, no problem of retroactivity is involved. See Gibbons, 311 B.R. at 403 ("[D]eterminations of whether or not a debtor is entitled to a discharge in bankruptcy of any given debt are governed by the law in force at the time the judge passes on the question of the discharge of that debt."). The court finds no reason that § 523(a)(19) should not be applicable to Hammond's bankruptcy. See In re Weilein, 328 B.R. 553, 555-56 (Bankr. N.D. Iowa 2005); In re Dupree, 336 B.R. 520, 527-28 (Bankr. M.D. Fla. 2005) (citing Weilein in finding § 523(a)(19) applicable).

## **CONCLUSION**

Based on the foregoing, the plaintiff's motion for summary judgment [#62] is GRANTED. Defendant Donald Hammond is ORDERED to pay disgorgement in the amount

of $577,720 and prejudgment interest in the amount of $213,730.87. The court reiterates its prior judgments permanently enjoining Hammond from violating the federal securities laws [#23] and ordering him to pay a civil penalty of $100,000 [#32].

Alexandria, Louisiana

1 March 2006

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE